```
                    UNITED STATES DISTRICT COURT
                 FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

LEO OLADIMU,                       :     CIVIL NO. 3:CV-11-1395
a/k/a Leo V. Felton,               :
       Petitioner                  :     (Kosik, J.)
                                   :
     v.                            :     (Smyser, M.J.)
                                   :
UNITED STATES,                     :
       Respondent                  :
```

**REPORT AND RECOMMENDATION**

The petitioner filed a habeas corpus petition claiming that the Bureau of Prisons improperly calculated his resentence, taking away 217 days of good conduct time twice, and improperly reduced his good conduct time by 62 days for violations he did not commit.  We conclude that the Bureau of Prisons properly computed the petitioner's sentence and did not improperly deprive the petitioner of good conduct time.  Accordingly, we recommend that the petition be denied.

I.   Background and Procedural History.

   The petitioner, a federal prisoner proceeding *pro se* and currently incarcerated at USP Hazelton, filed this 28 U.S.C. § 2241 petition on May 10, 2011 in the United States District Court for the District of Massachusetts.  Because the petitioner was incarcerated at USP Lewisburg when he filed his

petition, the Massachusetts District Court transferred the action to this Court.

On August 22, 2011, the respondent filed a response (doc. 17) to the petition for writ of habeas corpus.  The petitioner has not filed a reply.

The petitioner was arrested on April 19, 2001.  On December 11, 2002, he was convicted in the United States District Court for the District of Massachusetts of conspiracy to make and possess a destructive device, receipt of explosives with intent to kill or injure, felon in possession of a firearm, conspiracy to make and pass counterfeit federal reserve notes, conspiracy to obstruct justice, obstruction of justice, conspiracy to commit bank robbery and to interfere with commerce by robbery, and bank robbery.  The petitioner was sentenced to 262 months.  The First Circuit Court of Appeals affirmed the conviction but remanded the case for resentencing.  On December 14, 2006, the petitioner was resentenced to a term of 322 months.

The Bureau of Prisons (BOP) prepared a sentence computation report and determined that the petitioner's

sentence commencement date was December 11, 2002, with credit for time served from April 19, 2001 (his arrest date) through December 10, 2002 (the day before he was originally sentenced). According to the BOP's calculation, the petitioner's projected release date is August 22, 2025, assuming that no good conduct time is disallowed.

A prisoner serving a term of imprisonment for more than one year may receive credit for good conduct time of up to 54 days at the end of each year served for satisfactory behavior. *See* 18 U.S.C. § 3624(b); *see also* Bureau of Prisons Program Statement 5880.28, Sentence Computation Manual. The BOP has the sole discretion to determine whether a prisoner's conduct warrants an award of good conduct time in accordance with BOP policies and regulations. *See* 18 U.S.C. § 3624(b)(1). The BOP has adopted a formula that it uses to calculate an award of good conduct time. *See O'Donald v. Johns*, 402 F.3d 172, 173 (3d Cir. 2005).

The petitioner raises two claims in his petition. First, he challenges the BOP's calculation of his sentence. He claims that the BOP deprived him of 217 days of good conduct time. Doc. 1, ¶ 2. The petitioner claims that he was subjected to

double jeopardy when the BOP reimposed the same 217 days good conduct time disallowance against his new sentence as had been imposed, as a result of misconducts, against his initial sentence.  Second, the petitioner claims that the BOP improperly disallowed 62 days of good conduct time credits after disciplinary hearings between August 25, 2009 and December 21, 2010 for offenses which he did not commit.  Doc. 1, ¶ 3.  He contends that he is innocent of the charges and that the disciplinary hearing officer has not provided him with a disposition report as to four separate disciplinary hearings.  Doc. 1, ¶ 5.  The petitioner asks for restoration of the 217 days of good conduct time that were deducted from his previous sentence and of the 62 days of good conduct time that he lost because of the disciplinary actions.

The respondent argues that the petitioner's first claim, regarding his sentence calculation, should be dismissed for failure to exhaust administrative remedies or, in the alternative, denied on the merits.  Doc. 17, at 5.  The respondent argues that the petitioner's second claim, which challenges the findings of guilt in the disciplinary actions, should be dismissed on the merits because the disciplinary hearing officer met his evidentiary burden for a finding of

guilt and because the petitioner was afforded all requisite due process.  Doc. 17, at 5.

II.  Discussion.

   A.  Improper Resentence Calculation.

We begin with the petitioner's first claim.  Ordinarily, federal prisoners are required to exhaust all of their administrative remedies prior to petitioning for a writ of habeas corpus.  *See Moscato v. Federal Bureau of Prisons*, 98 F.3d 757, 760 (3d Cir. 1996); *see also Callwood v. Enos*, 230 F.3d 627, 634 (3d Cir. 2000) ("[W]e have consistently applied an exhaustion requirement to claims brought under § 2241."). When a petitioner fails to exhaust his administrative remedies prior to filing a § 2241 petition, the Court may in its discretion excuse the failure to exhaust and address the merits or require the petitioner to exhaust his administrative remedies.  *See Ridley v. Smith*, 179 Fed. Appx. 109, 111 (3d. Cir. 2006) (citing *Brown v. Rison*, 895 F.2d 533, 535 (9th Cir. 1990)).

In the present case, the petitioner did not exhaust the BOP's administrative remedy process with regard to his sentence calculation claim prior to filing his petition.  On May 24,

2011, fourteen days after he filed his § 2241 petition in federal court, the petitioner filed a request for an administrative remedy with the prison, claiming that good conduct time was taken twice. Doc. 18, at 23. This remedy was denied at the institution level and the petitioner appealed to the BOP regional office. When this appeal was denied, the petitioner further appealed to the BOP Central Office. The BOP Central Office's response to the petitioner's appeal was due September 3, 2011. Even though the petitioner failed to exhaust available administrative remedies prior to filing his § 2241 petition, he has now exhausted his administrative remedies. So we will address the merits of the petitioner's claim.

The petitioner states that the BOP miscalculated his sentence by disallowing 217 days of good conduct time that already had been deducted from his original sentence. The BOP responds that the action it took after the resentencing was to replicate the 217 day disallowance, imposed as to the initial sentence due to misconduct, as to the new sentence. The petitioner does not present any explanation or evidence to support his assertion that more than 217 days of good conduct time were disallowed in the calculation of his sentence.

Contrary to the petitioner's claims, the record shows that the BOP properly computed his term of imprisonment.  The BOP determined that the petitioner's term for the resentence commenced on December 11, 2002, the same date as the original computation pursuant to BOP Program Statement 5880.28, Sentence Computation Manual.  The BOP awarded the petitioner credit for time served from April 19, 2001 through December 10, 2002.  The BOP did not deduct 217 good conduct time days twice from the petitioner's sentence.  The petitioner has not provided any evidence to the contrary or a justification under law for a different calculation.  Accordingly, the BOP properly computed the petitioner's term of imprisonment.  Thus, this claim is without merit and should be denied.

    B.  Improper Disallowance of Good Conduct Time as a Punishment for Disciplinary Actions.

    We next consider the petitioner's claim that 62 days of good conduct time were improperly taken away from him as punishments after four disciplinary hearings and adjudications.  He maintains that he was innocent in each of the four instances and claims that he has been unable to appeal the disciplinary hearing officer's decisions because he has not received a copy of the disciplinary hearing disposition reports.  The

petitioner essentially argues that the evidence did not satisfy the applicable evidentiary burden. He also asserts that he was prevented from making a timely appeal in violation of his due process rights.

"[A] prisoner has a constitutionally protected liberty interest in good time credit." *Young v. Kann*, 926 F.2d 1396, 1399 (3d Cir. 1991). The Supreme Court has noted, however, that "[p]rison disciplinary proceedings are not part of a criminal prosecution and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). In *Wolff,* the Supreme Court detailed the due process protections that must be afforded to prisoners facing the loss of GCT as a result of an institutional misconduct charge. The minimum due process requirements include: "(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." *Superintendent v. Hill*, 472 U.S. 445, 454 (1985); *Wolff*, *supra*, 418 U.S. at 564-571.

In *Superintendent v. Hill*, *supra*, the Supreme Court held that due process requires that the findings of the disciplinary body must be supported by some evidence in the record prior to revocation of GCT.  472 U.S. at 454.  In the prison disciplinary context, due process "requires only that there be some evidence to support the findings made in the disciplinary hearing."  *Id.*  The relevant question in ascertaining whether the "some evidence" standard is satisfied is "whether there is any evidence in the record that could support the conclusion reached by the disciplinary board."  *Id.* at 455-56.

The petitioner claims that his due process rights were violated in each of the four disciplinary hearings.  We will review each incident separately.

On August 20, 2009, the petitioner was charged with refusing an order by refusing to submit to hand restraints.  The disciplinary hearing officer conducted a hearing on August 25, 2009, and concluded that the petitioner had refused to submit to hand restraints.  The hearing officer based his findings on officer reports and witness testimony.  The hearing officer relied on the reporting officer's testimony, memoranda written by staff, and the petitioner's own testimony and

written statement.  The disciplinary hearing officer imposed sanctions, including disallowance of 7 days good conduct time, and issued a written decision on August 10, 2011.

On September 27, 2009, the petitioner was charged with threatening another with bodily harm.  It was charged that he swore at an officer asserting that he had abrasions on his wrist caused by handcuffs, and that he voiced threats by saying, "If it happens again, one of you is gonna get hurt. Doesn't matter who it is, they're gonna get hurt."  Doc. 18, at 40.  The disciplinary hearing officer conducted a hearing on October 19, 2009, and concluded that the petitioner committed the prohibited act as charged.  The hearing officer relied on the eyewitness account of the reporting officer, written memoranda by staff, and the petitioner's own testimony.  The hearing officer imposed sanctions, including disallowance of 27 days good conduct time, and issued a written decision on August 8, 2011.

On April 16, 2010, the petitioner was charged with refusing an order and attempted assault.  It was alleged that he aggressively rushed out of his cell after he was told to back out of his cell.  The disciplinary hearing officer

conducted a hearing on April 29, 2010 and concluded that the petitioner committed the act of interfering with staff, most like refusing an order.  The hearing officer relied on the incident report, surveillance video footage, and a memorandum written by a staff member who witnessed the incident.  The hearing officer imposed sanctions, including disallowance of 14 days good conduct time, and issued a written decision on August 8, 2011.

On November 15, 2010, the petitioner was charged with blocking a locking device, interfering with staff in the performance of duties, and insolence toward staff.  It was alleged that he refused to properly place his food tray in his cell door so that the wicket could be shut and locked.  The disciplinary hearing officer conducted a hearing on December 21, 2010 and concluded that the petitioner was guilty of interfering with staff, most like refusing an order.  The disciplinary hearing officer relied on the incident report, the eyewitness account of the reporting officer, the petitioner's testimony, and testimony of the petitioner's cellmate.  The hearing officer imposed sanctions, including disallowance of 14 days good conduct time, and issued a written decision on August 8, 2011.

As noted in the four preceding paragraphs, there was some evidence to support the disciplinary hearing officer's conclusion that the petitioner was guilty of the charged offenses. The petitioner was permitted to present evidence and testimony at each of the four disciplinary hearings. After hearing the testimony and reviewing the evidence at each hearing, the disciplinary hearing officer made a determination. The disciplinary hearing officer stated the evidence and stated findings of fact in a separate written report for each incident. Thus, we conclude that the DHO's decisions were supported by "some evidence."

The petitioner claims that he was denied due process because he was not given written statements by the factfinder as to the evidence relied on and the reasons for the disciplinary actions taken. The disciplinary hearing officer's written statements were not issued and delivered to the petitioner until a significant time after the hearings were completed. In fact, the written statements were not issued and delivered to the petitioner until after he filed this case. The written report from the August 25, 2009 hearing was not issued until nearly two years later, on August 10, 2011. The

respondent states that the delay was caused by "an extraordinarily high volume of disciplinary actions in 2010 and 2011." Doc. 17, at 11 n. 2.

The Supreme Court in *Wolff* mandated that an inmate must be provided with "a written statement by the factfinders as to the evidence relied on and reasons for the disciplinary action." *Wolff*, *supra*, 418 U.S. at 564. The Court noted that the requirement for a written report is necessary to protect the inmate against collateral consequences as well as to insure that prison administrators will act fairly and permit an inmate to effectively seek review of the disciplinary decision. *Id.* at 565.

The petitioner was not provided a written statement as required by *Wolff*. But while the disciplinary hearing officer's written reports were not timely made available to the petitioner, he has since been provided with the written reports and was granted 20 days in accordance with BOP regulations to appeal each decision. Thus, the error has already been corrected. Further, the plaintiff has not shown that he suffered any prejudice as a result of the delay. *See Von Kahl v. Brennan*, 855 F.Supp. 1413, 1422 (M.D. Pa. 1994) (stating a

prisoner must show harm or "actual prejudice to the interests the regulation is designed to protect").  Accordingly, the petitioner is not entitled to a writ of habeas corpus.


III. Recommendation.

Based on the foregoing, it is recommended that the petition (doc. 1) for a writ of habeas corpus be denied.


*/s/ J. Andrew Smyser*
J. Andrew Smyser
Magistrate Judge

Dated:  October 24, 2011.